IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 12-295-3 |
| v. | : | |
| | : | |
| STEIN SCRUGGS | : | |

Pratter, J.                                              June 4, 2013

**MEMORANDUM**

**INTRODUCTION**

      Mr. Stein Scruggs allegedly served as the getaway driver for an armed robbery of a South Broad Street McDonald's restaurant that occurred close to 11:00 p.m. on Sunday, February 12, 2012. Mr. Scruggs was indicted by the grand jury four months later and charged with conspiracy to commit robbery (a violation of 18 U.S.C. § 1951(a) - - Count One), robbery in interference with interstate commerce and aiding and abetting same (a violation of 18 U.S.C. § 1951(a) and § 2 - - Count Two), and using and carrying a firearm during and in relation to a crime of violence and aiding and abetting (a violation of 18 U.S.C. § 924(c)(1) and § 2 - - Count Three). Mr. Scruggs has moved to suppress his statement to the Philadelphia police detectives who questioned him the morning after the robbery (Docket No. 55) and has filed a separate motion to suppress certain physical evidence recovered from the car allegedly driven by Mr. Scruggs from the crime scene (Docket No. 54).

      The Court presided over a two-day evidentiary hearing on April 29 and May 7, 2013 concerning the suppression motions. In response to defense counsel's request, the Court permitted supplemental briefing after the transcript of the evidentiary hearing proceedings

became available. The issues are now ripe for disposition. For the reasons summarized below the Court denies the suppression motions.

**DISCUSSION**

The law enforcement witnesses who presented testimony pertinent to the physical evidence motion were Police Officer David Anzideo, Detective James Powell, Officer Yalitza Velez, and Officer Darren Rawlings. With one, ultimately insignificant, exception[1] these witnesses presented credible and consistent accounts of the on-the-street police activities on the night of the robbery.

At approximately 11:00 p.m. on February 12, 2012, officers Anzideo and Velez, who were then in uniform together in a marked patrol car, received a radio alert of a robbery in progress approximately 10 or 11 blocks away at the McDonald's restaurant in the 900 block of South Broad Street. Reportedly, two men with a shotgun had committed the robbery. The officers headed to the McDonald's, driving east on Washington Avenue from 23rd Street. In transit the officers saw a Buick with three men in it coming from the opposite direction who were, as instinctively assessed by Officer Anzideo looking through his rear view mirror, behaving suspiciously by slowing down at green lights. This prompted the officer to turn the patrol car around and begin to follow the civilian car. The officers ran the license tags of the Buick which produced no problematic information. As Officer Anzideo drew his car up next to defendant's car at a stop light, a "flash" report was received by the officers describing one of the

---

[1] The discrepancy concerned Officer Anzideo's recollection that the model of the car driven by Mr. Scruggs was a Buick Century (4/29/13 Hrg. N.T. 37), while Det. Powell testified it was a Buick Regal (4/29/13 Hrg. N.T. 41, 42). The Court concludes that these different model descriptions are of no moment - - especially given that both witnesses ascribed to the Buick at issue the same license tag, namely PA HMC 7650. See 4/29/13 Hrg. N.T. 12; 53.

2

robbers as a black man dressed in black.  To the officer's eye at least, the driver of the other car fit the flash description.  Moreover, the driver - - who turned out to be defendant Stein Scruggs - - assiduously avoided any eye contact with the police car occupants.  Officer Anzideo observed that there were others in the civilian car, though fogged windows prevented a clear view of the back seat.  Ultimately, under all of the circumstances, Detective Powell formed a good-faith belief he was looking at the robbers.

At this point, Officers Rawlings and Mark Selby drove their marked police car to be between Mr. Scruggs's car and the first patrol car.  The Rawlings/Selby police car was moving to block the front of the civilian car, but as soon as the light turned green, Scruggs's car bolted away.  Officer Anzideo activated his car's lights and siren and gave chase.  Mr. Scruggs drove erratically and at a high rate of speed.  He soon collided head-on with another car, at which point all of the occupants of the Scruggs car rapidly fled.  Mr. Scruggs was apprehended.  Following some period of resistance during which, among other comments,  Mr. Scruggs protested that he had been made to engage in the McDonald's activities by the others who had threatened him with a gun, Mr. Scruggs was eventually subdued and handcuffed by Officer Anzideo.  Officer Velez arrested the other two occupants of the Buick.

At the motor vehicle collision site, Detective Powell and his partner, Eric Johnson, proceeded to investigate.  In the Buick driven by Mr. Scruggs, Det. Powell saw U.S. currency and a shotgun in plain view.  Det. Powell quickly photographed the inside of the car because it was on fire, and then removed the bag with the money and the shotgun.  Later, the detectives obtained a search warrant to undertake a search of the car, pursuant to which they found three cell phones, two pairs of gloves and three ski hats.  Victims of the robbery came from the McDonald's to the

crash site and identified Mr. Scruggs as a fellow McDonald's employee who had not been inside the restaurant during the robbery.

Following the on-the-street arrest, Mr. Scruggs was taken to the Southwest Detectives Division facility. He was placed in a holding cell awaiting an interview that took place mid-morning on February 13 by Det. Johnson and Det. Neal Aitken, both of whom testified at the hearing. Mr. Scruggs was at that point uninjured and unimpaired. The interviewing detectives were unarmed. Having been given <u>Miranda</u> warnings and waived his attendant rights, Mr. Scruggs proceeded to provide a 6-page written statement. He was not restrained in handcuffs or shackles; he was allowed to smoke; he did not at that time express any objections or complaints about his treatment by the police. Mr. Scruggs re-read his statement, made a minor correction, signed each page of the statement, and initialed various answers. Govt. Ex. 4. According to the detective, Mr. Scruggs made no request to make any phone calls during the interview.

Mr. Scruggs testified at the evidentiary hearing and presented a different account on some points. In particular, the major point of difference is that Mr. Scruggs testified that the detectives said he could use his phone to call his fiancée to tell her where he was if he gave a statement. Mr. Scruggs contends that that is why he gave the statement. Mr. Scruggs testified that the statement reflects what he told the detectives during the interview, and he acknowledged his initials and signatures. Mr. Scruggs now contends that his statement was not completely accurate because the roles of the other two participants were actually reversed from what he recounted in the statement. He does not challenge any other aspect of the statement.

Regarding the events leading up to the car chase and collision, Mr. Scruggs disputed driving in a suspicious manner. He candidly explained that he had no reason to act suspiciously

4

because he expected that any initial report concerning the McDonald's robbery would describe "two people on foot", not "three people in a car." 5/7/13 Hrg. N.T. 55. He did admit trying to evade the police once his car was about to be blocked by a police vehicle "because of what just happened." 5/7/13 Hrg. N.T. 54, 56. Mr. Scruggs's account of the events from the car chase, to the collision and the altercation, and then being subdued and handcuffed is materially consistent with the officers' description of the same events.

Beginning with Mr. Scruggs's challenge to the validity of the police officers' stop of the Scruggs vehicle, the police conduct is measured against the limits delineated in Terry v. Ohio, 392 U.S. 1 (1968), as further outlined in United States v. Sokolow, 490 U.S. 1 (1989), and United States v. Arvizu, 534 U.S. 266 (2002), and by the Third Circuit Court of Appeals in United States v. Valentine, 232 F.3d 350 (3d Cir. 2000), Johnson v. Campbell, 332 F.3d 199 (3d Cir. 2003), and United States v. Ubiles, 224 F.3d 213 (3d Cir. 2000). This case law provides that when the police observe conduct considered to be unusual that leads the police, based on their common sense and experience, to reasonably conclude from "the whole picture" that criminal activity "may be afoot", the police are authorized to make a stop and reasonable inquiries. The fact that the same conduct could be entirely innocent does not undermine the officers' good faith exercise of judgment. The testimony presented by Officer Anzideo credibly explained why he and his partner determined to follow the Scruggs car. Of course, once Mr. Scruggs fled the police cars and ultimately collided with another car and then tried to flee on foot, that conduct provided an unassailable further basis to stop and seize Mr. Scruggs. United States v. Williams, 413 F.3d 347, 352-53 (3d Cir. 2005); see also California v. Hodari D., 499 U.S. 621, 623-24 & n.1. (1991).

Conventional case law also authorized the on-site seizure from the car of the cash and shotgun that was in the plain view of Det. Powell, particularly given the exigency of a car fire. See Arizona v. Gant, 556 U.S. 332 (2009); Maryland v. Dyson, 527 U.S. 465 (1999). Thus, no warrant was required to seize those items. The remaining evidence was seized after the subsequent warrant issued.

Mr. Scruggs's motion to suppress his statements to the police fares no better. In this case, there is no serious challenge to the operative circumstances surrounding Mr. Scruggs's statements. Mr. Scruggs was informed of his Miranda rights. Under no impairment or compulsion, Mr. Scruggs waived those rights. Even Mr. Scruggs's testimony, if believed, does not conjure up the image of coercive police activity that could, would or did overtake Mr. Scruggs's willpower such as to render his statements involuntary. Likewise, the conduct of the officers could not be said fairly to inveigle, trick or otherwise seek out from Mr. Scruggs the statement he now hopes to persuade the Court to suppress.

## **CONCLUSION**

For the reasons above and on the basis of the evidence presented at the hearing in this matter, the motions to suppress are **DENIED.** An Order to that effect accompanies this Memorandum.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge