IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION<br>NO. 12-295-3 |
| v. | |
| STEIN SCRUGGS | |

MEMORANDUM OPINION

Stein Scruggs was working at a McDonald's in Philadelphia, Pennsylvania when he recruited two childhood friends to stage an armed robbery of the restaurant. For his role as the heist's getaway driver, he was convicted of robbery; conspiracy to commit robbery; and, using, carrying, and brandishing a firearm during and in relation to a crime of violence. His conviction was upheld on appeal. *United States v. Scruggs*, 617 F. App'x 128, 130 (3d Cir. 2015). Now serving a 205-month sentence as an inmate at FCI Allenwood, Scruggs—proceeding *pro se*—moves for immediate release pursuant to the "compassionate release" statute, 18 U.S.C. § 3582(c)(1)(A). For the reasons below, his Motion will be denied.

I. DISCUSSION

The compassionate release statute authorizes courts to modify a term of imprisonment only if there are "extraordinary and compelling reasons" for doing so. 18 U.S.C. §§ 3582(b), (c)(1)(A).[1]

Congress delegated to the United States Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). Accordingly, the Commission has issued a policy statement

---

[1] Before bringing a motion for compassionate release, a defendant must first exhaust administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A). Here, the Government does not dispute that Scruggs satisfied that requirement.

defining six circumstances that warrant relief: the defendant's (1) medical circumstances, (2) age, and, (3) family circumstances; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons "similar in gravity" to those previously described; and, (6) whether the defendant received an "unusually long" sentence. U.S.S.G. §§ 1B1.13(b)(1)-(6). This framework, absent unusual circumstances, is binding upon courts. *See United States v. Rutherford*, 120 F.4th 360, 375 (3d Cir. 2024) ("[T]he Commission's policy statements are generally binding on us." (citing *United States v. Berberena*, 694 F.3d 514, 522 (3d Cir. 2012))).[2] In this case, Scruggs argues that qualifies for release under the first category (on two bases) and the fifth category.

A. **Failure to Provide Necessary Medical Care**

Extraordinary and compelling circumstances exist where a defendant suffers from "a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). In his Motion, Scruggs notes that he suffers from several afflictions, including colorectal cancer, supraventricular tachycardia (SVT), chronic gastroesophageal reflux disease (GERD), and a vitamin D deficiency.[3] All parties agree that the BOP and outside health providers are actively treating Scruggs's conditions.

---

[2] Even if an inmate presents extraordinary and compelling reasons for release, the Commission's policy statement further requires courts to: (1) consider the factors set forth in 18 U.S.C. § 3553(a); (2) determine that the inmate is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and, (3) find that a reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(a). As explained below, the grounds for Scruggs's Motion do not rise to the level of "extraordinary and compelling" within the meaning of 18 U.S.C. § 3582(c)(1)(A). Accordingly, these additional requirements need not be considered here. *See United States v. Stewart*, 86 F.4th 532, 535 (3d Cir. 2023) (framing whether a prisoner establishes extraordinary and compelling reasons as a "threshold eligibility hurdle" for a sentence reduction).

[3] Scruggs also asserts that he has stage-two kidney disease. A search of his BOP medical records, however, does not corroborate that assertion. Meanwhile, the records reveal additional ailments, such as anxiety disorder and a chronic ulcer on his right foot, that he does mention in his Motion and thus will not be considered here.

To start, Scruggs was recently diagnosed with stage-two colorectal cancer. About a year before his diagnosis, he had complained of abdominal pain and rectal bleeding that BOP health officials sought to evaluate via colonoscopy. For reasons unknown, however, Scruggs refused the colonoscopy at the last minute. When his symptoms eventually worsened, causing Scruggs to vomit and become bedridden, BOP transported him off-site to a hospital. A CT scan then revealed a malignant tumor in his abdomen. Doctors successfully removed the diseased portion of his colon and performed a colostomy. The next step in his treatment is chemotherapy, which BOP will support. His prognosis is generally favorable, as his cancer has not extended into nearby organs or lymph nodes and was assigned a low risk of metastasis.

Although Scruggs does not argue that BOP has failed to provide him cancer treatment, he expresses a particular concern about the "high risk of falling seriously ill with COVID-19 because of [his] colorectal cancer." He references a Wall Street Journal article reporting that the Food and Drug Administration (FDA) approved next year's COVID-19 boosters for a limited population: "older adults and high-risk younger people." Sumathi Reddy, *How to Get the New Covid-19 Vaccine*, Wall St. J. (Sept. 2, 2025, at 9:00 pm ET), https://www.wsj.com/health/healthcare/covid-vaccine-what-to-know-how-to-get-0b075ae6. Scruggs thus seems to be under the impression that he is ineligible for next year's COVID-19 booster, putting him at an increased risk of severe illness in his immunocompromised state.

The COVID-19 vaccine is not a cure-all. As experience and research have shown, periodic boosters are necessary to fortify the immune system against COVID-19 variants and regenerate antibodies, which naturally decrease over time. *Why do vaccines require boosters?*, UCLA Health (Mar. 14, 2022), https://www.uclahealth.org/news/article/why-do-vaccines-require-boosters. Because the FDA has announced restrictions on next year's boosters, some

experts speculate that COVID-19 transmission and death rates will increase in the near future. *See* Reddy, *supra*. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (2020). And, for the past few years, the widespread availability of a vaccine has persuaded courts to deny compassionate release even for inmates with a pre-existing condition. *See, e.g.*, *United States v. Hannigan*, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) ("District Courts in the Third Circuit consistently agree that an FDA-approved vaccination against COVID-19 lessens the risk of serious illness or death from COVID-19 such that the threat of the pandemic, even combined with pre-existing medical conditions, does not constitute an extraordinary and compelling reason for compassionate release."). However, an inmate with a high-risk condition who is unable to obtain a booster while infection rates resurge might qualify for a sentence reduction. *See, e.g.*, *United States v. Davis*, 2021 WL 662409, at *2 (E.D. Pa. Feb. 19, 2021) (holding, at a time when vaccines were not widely available, that an inmate demonstrated extraordinary and compelling reasons because his cancer and obesity put him at a heightened risk of a COVID-19 infection).

On the current record, however, Scruggs's generalized distressed about future limits on booster eligibility and the consequences of that policy are wholly speculative. He does not assert that he has been denied booster. Nor does he report an outbreak of COVID-19 at FCI Allenwood. Moreover, although it is true that the FDA approved next year's vaccine only for a limited population, cancer patients like Scruggs are a high-risk group who are booster eligible. *See Underlying Conditions and the Higher Risk of Severe COVID-19*, Ctr. Disease Control & Prevention, https://www.cdc.gov/covid/hcp/clinical-care/underlying-conditions.html (last updated Feb. 6, 2025). Thus, while Scruggs's concern is understandable, it is inchoate and, thus,

insufficient to warrant his immediate release.

In addition to his cancer, Scruggs also suffers from SVT, a heart rhythm disorder that causes a fast or erratic heartbeat.  *Supraventricular tachycardia*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/supraventricular-tachycardia/symptoms-causes/syc-20355243 (last updated Mar. 7, 2024).  BOP is also treating this condition.  Initially, he was prescribed a beta-blocker that slowed and regulated the heartbeat.  Then he underwent an ablation procedure to block the abnormal electrical signals causing the arrhythmia, and he discontinued the beta-blocker.  The procedure had mixed success, so BOP restarted the beta-blocker to manage Scruggs's lingering SVT episodes.  Scruggs asserts that he requires another procedure to manage his SVT, but his medical records reflect a plan to "[f]ollow up in 6 months or sooner."

Finally, Scruggs reports that he has GERD, a condition marked by persistent acid reflux,[4] and a vitamin D deficiency.  Even assuming, without deciding, that these conditions "require[] long-term or specialized medical care" without which Scruggs is "at risk of serious deterioration in health or death," U.S.S.G. § 1B1.13(b)(1)(C), his medical records again indicate that BOP is addressing each condition through prescription medication.

In sum, the record demonstrates that BOP has timely responded to Scruggs's numerous and evolving medical needs, even when he has been uncooperative about his own treatment.[5]  He therefore has not shown that "medical care . . . is not being provided" to him.  U.S.S.G. §

---

[4] *Gastroesophageal reflux disease (GERD)*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/gerd/symptoms-causes/syc-20361940 (last updated Apr. 23, 2025).

[5] For example, in September 2025, Scruggs was scheduled for a CT scan of his chest, abdomen, and pelvis so that doctors could plan his chemotherapy treatment.  Scruggs refused the scan because he did not want to go the Special Housing Unit the night before the scan, which is a standard security precaution when inmates are transported off-site.  BOP and Scruggs had extensive discussions about the risks of forgoing treatment, such as cancer progression and death.  BOP was eventually able to persuade him to go forward with the CT scan.

5

1B1.13(b)(1)(C); *see also, e.g.*, *United States v. Ho-Sue*, 2025 WL 1698743, at *4 (E.D. Pa. June 17, 2025) (denying compassionate release where medical records showed the defendant received insulin and oral medication for his diabetes); *United States v. Pierce*, 2025 WL 1171587, at *3 (E.D. Pa. Apr. 22, 2025) (denying release where the inmate, after undergoing an amputation, received wound care multiple times a week, went off-site for medical appointments, and obtained prescriptions to address his medical needs).

### B. Serious Condition, Serious Impairment, or Age-Related Deterioration

Reasserting the same conditions as previously described, Scruggs also moves for release under a different provision of the compassionate release statute concerning an inmate's medical circumstances:

> (B) The defendant is--
>   (i) suffering from a serious physical or medical condition,
>   (ii) suffering from a serious functional or cognitive impairment, or
>   (iii) experiencing deteriorating physical or mental health because of the aging process,
>     that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13(b)(1)(B). In other words, extraordinary and compelling reasons exist where the defendant (1) suffers from a serious condition, serious impairment, or age-related deterioration (2) that substantially diminishes his ability to provide self-care and (3) from which he is not expected to recover. *Id*. The policy statement does not define "the ability of the defendant to provide self-care," but "[c]ourts generally interpret the phrase to refer to a defendant's ability to independently ambulate, take care of personal hygiene, and perform other [activities of daily living] such as dressing, eating, and taking medication." *United States v. Bailey*, 2025 WL 1114185, at *5 (D.D.C. Apr. 15, 2025) (collecting cases).

None of Scruggs's conditions qualify under this provision. With respect to his cancer:

6

his treatment plan indicates he is expected to recover. Moreover, the cancer's effect on his ability to provide self-care appears to be minimal; Scruggs notes that he wears an ostomy bag following his procedure, but he has not demonstrated that he incapable of managing the bag or his personal hygiene more generally.

For his other conditions, his Motion does not provide any basis to conclude that they "substantially diminish[]" his ability to provide self-care. U.S.S.G. § 1B1.13(b)(1)(B). The notes from his most recent medical check-up indicate that he has "mobility problems" and occasionally uses a wheelchair, but they add that he has a "normal gait/transferring." There is nothing in the record to suggest that he cannot move around independently, dress, eat, or take his medications. Accordingly, because Scruggs has failed to address a key requirement for compassionate release under this medical circumstance, relief cannot be granted on this basis. *See, e.g.*, *Ho-Sue*, 2025 WL 1698743, at *4-5 (denying compassionate release where the inmate failed to demonstrate that his diabetes, glaucoma, and osteoarthritis made him "unable to care for himself").

### C. "Other Circumstances" for Relief

Finally, Scruggs's Motion presents two additional reasons for compassionate release: staff shortages at FCI Allenwood have disrupted rehabilitation programs and increased the number of lockdowns, and he has served a substantial majority of his term of imprisonment.

The statute authorizes relief if "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The grounds for relief in subsections (b)(1)-(4) are "uncommon circumstances" where "continued imprisonment would result in a

7

significant collateral or secondary harm to the defendant." *United States v. Andrews*, 480 F. Supp.3d 669, 684 (E.D. Pa. 2020), *aff'd*, 12 F.4th 255 (3d Cir. 2021); *see also* U.S.S.G. §§ 1B1.13(b)(1)-(4) (authorizing relief where, for example, the inmate has a terminal illness or has suffered abuse at the hands of a prison official).

The words "extraordinary and compelling" also inform the kinds of "other circumstances" that would warrant a sentence reduction. "Extraordinary" is defined as "[b]eyond what is usual, customary, regular, or common." *Extraordinary*, Black's Law Dictionary (10th ed. 2014). And based on the definition for "compelling need," a compelling reason is one that is "so great that irreparable harm or injustice would result if [relief] is not [granted]." *Compelling Need*, Black's Law Dictionary (10th ed. 2014).

When considered alone or together with Scruggs's medical problems, Scruggs's other circumstances do not warrant release. That FCI Allenwood has a staffing shortage, resulting in lockdowns and reduced programming, is regrettable, but it is not "similar in gravity" to the exceptional situations enumerated in subsections (b)(1)-(4). U.S.S.G. § 1B1.13(b)(5). Instead, the shortage is a "generic hardship[], common to federal prisoners, [that] cannot be regarded as extraordinary." *United States v. Wilson*, 2024 WL 4793713, at *6 (E.D. Pa. Nov. 14, 2024) (citation omitted). Similarly, that Scruggs has served approximately 177 months of his 205-month sentence is not a unique circumstance. At some point, every inmate nears the end of his term of imprisonment, and there is no irreparable harm or injustice that flows from a prisoner serving his full sentence.[6]

Thus, because Scruggs has not met his burden of establishing that "extraordinary and

---

[6] Instead of constituting an extraordinary and compelling reason for release, "the time remaining in [a] sentence" is more appropriately considered at the next step in the compassionate release analysis, when determining "whether immediate release would be consistent with [the § 3553(a)] factors." *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020).

8

compelling reasons" warrant a modification of his sentence, he is not eligible for relief pursuant to 18 U.S.C. § 3582(c)(1)(A) and his Motion will be denied.

An appropriate order follows:

BY THE COURT:

_____
**WENDY BEETLESTONE, C.J.**
